UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONS LENDING CORPORATION, | ) ) | Case No. 1:24-cv-00222 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge Jonathan D. Greenberg |
| ROLAND GOMEZ, | ) ) | |
| Defendant. | ) ) ) | |

**OPINION AND ORDER**

Plaintiff Nations Lending Corporation seeks to enforce an employment agreement with a former branch manager. It filed suit for damages and injunctive relief alleging breach of contract and violations of State and federal law. Defendant Roland Gomez moves to dismiss the complaint based on mandatory arbitration clauses included in his employment contract and bonus agreement. Nations Lending argues that its claims fall within an exception to the arbitration clause because it seeks injunctive relief. For the reasons that follow, the Court **COMPELS** arbitration and **STAYS** proceedings in this case.

**STATEMENT OF FACTS**

Nations Lending is a mortgage provider operating throughout the United States. (ECF No. 1, ¶ 9, PageID #2; ECF No. 8, ¶ 9, PageID #75.) On or about October 27, 2022, Mr. Gomez began working as a producing branch manager for Nations Lending and entered into two contracts: an employment agreement and a bonus advance agreement. (ECF No. 1, ¶¶ 10–13, PageID #2–3; ECF No. 8, ¶ 10–13, PageID

#75–76.) On May 2, 2023, just over six months after he entered into these contracts, Mr. Gomez resigned from Nations Lending. (*Id.*, ¶ 17, PageID #3; ECF No. 8, ¶ 17, PageID #76.) Nations Lending alleges that Mr. Gomez began employment with a competitor. (ECF No. 1, ¶ 22, PageID #4; ECF No. 8, ¶ 22, PageID #77.)

Nations Lending asserts that Mr. Gomez violated restrictive covenants in his employment agreement when he solicited its clients, engaged in unfair competition, and used its confidential information in his new position with a competitor. (ECF No. 1, ¶¶ 23–26, PageID #4–5.) According to the complaint, Mr. Gomez's employment contract prohibited him from working for a competitor for a twelve-month period following his separation from Nations Lending. (*Id.*, ¶ 23, PageID #4.) Nations Lending alleges that Mr. Gomez's actions have resulted in the loss of at least five customers and that it will suffer irreparable harm without injunctive relief. (*Id.*, ¶¶ 25–28, PageID #5.) Notably, the twelve-month period expired earlier this year, in May 2024.

Additionally, Nations Lending alleges that Mr. Gomez violated the parties' bonus advance agreement. (*Id.*, ¶¶ 29–34, PageID #5–6.) This agreement provides that Nations Lending will pay Mr. Gomez $150,000 as an "inducement to commence employment," contingent on Mr. Gomez completing twenty-four continuous months of employment. (ECF No. 1-1, PageID #38.) Because Mr. Gomez left within twenty-four months, Nations Lending alleges that he must repay the $150,000. (*Id.*, ¶¶ 15, 29–34, PageID #3 & #5–6.)

2

## STATEMENT OF THE CASE

Nations Lending asserts six causes of action. (ECF No. 1.) In Count One, Nations Lending alleges a breach of the bonus advance agreement based on Mr. Gomez's failure to repay the $150,000 within thirty days. (*Id.*, ¶¶ 29–34, PageID #5–6.) In Count Two, Nations Lending alleges that Mr. Gomez breached his employment contract by using confidential information and soliciting clients during the contractual twelve-month restricted period. (*Id.,* ¶¶ 35–43, PageID #6–7.) In Counts Three and Four, Nations Lending alleges that Mr. Gomez's misappropriation of confidential information constitutes a violation of the federal Defend Trade Secrets Act and the Ohio Trade Secrets Act. (*Id.*, ¶¶ 44–67, PageID #7–10.) In Count Five, Nations Lending alleges tortious interference with contracts or business relationships. (*Id.*, ¶¶ 68–73, PageID #10–11.) In Count Six, Nations Lending claims unjust enrichment. (*Id.*, ¶¶ 74–78, PageID #11.) Counts Two through Six seek injunctive relief, while Count One does not. (ECF No. 1, PageID #11–13.)

Mr. Gomez moves to dismiss all counts, arguing that they are subject to the mandatory arbitration provisions in his employment and bonus agreements. (ECF No. 7, PageID #69–71; ECF No. 10, PageID #104–07.) Nations Lending maintains that the Court has jurisdiction because the employment agreement has an exception to the arbitration clause for injunctive relief. (ECF No. 9, PageID #97–99.) In relevant part, the employment agreement's arbitration clause provides:

> Any disagreement, dispute, controversy, or claim of any kind ("claims") arising out of or in connection to this Agreement, including claims related to Employee's hiring, employment or the termination of Employee's employment . . . shall be resolved by arbitration under the

> Federal Arbitration Act, Chapters 1 and 2, to the exclusion of inconsistent state laws, whether such claims are based in tort, contract, statute, equity, or otherwise.

(ECF No. 1-1, § 11, PageID #25.) Similarly, the bonus agreement's arbitration clause provides in pertinent part:

> The Parties agree that any claims or disputes related to or arising out of this Agreement will be subject to binding arbitration and that arbitration will be the only remedy for resolution of any such claim or dispute.

(*Id.*, PageID #40.)

Notwithstanding these arbitration agreements, much of the parties' argument turns on the exception to the arbitration clause in the employment agreement for injunctive relief. That miscellaneous provision allows a party, as relevant here, to bring an action in State or federal court "for the purposes of obtaining a restraining order or injunction against a violation of the provisions of this Agreement." (ECF No. 1-1, § 10(i), PageID #24.) It provides:

> Any action or proceeding by either of the parties to enforce this Agreement shall be brought only in accordance with the arbitration provision contained within this Agreement except that action may be brought in a state or federal court located in the state of Ohio or the state of Employee's primary residence, if different, for the purposes of obtaining a restraining order or injunction against a violation of the provisions of this Agreement or to enforce a judgment rendered in accordance with the results of arbitration between the parties. The parties hereby irrevocably submit to the non-exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

(*Id.*) Defendant seeks dismissal of the lawsuit on the basis of the arbitration clauses and argues that the injunctive relief exception does not permit litigation in court here

4

because Plaintiff has not moved for a temporary restraining order or preliminary injunction. (*See* ECF No. 7, PageID #71.)

## ANALYSIS

In cases involving arbitration agreements, a party's "'failure to pursue arbitration' in spite of a compulsory arbitration provision means that the party 'has failed to state a claim.'" *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (quoting *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)). Therefore, this motion to dismiss turns on whether Plaintiff's claims asserted are subject to arbitration.

The Federal Arbitration Act "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardenga*, 546 U.S. 440, 443 (2006). In determining whether the parties agreed to arbitrate, the Court applies the State law governing contracts. *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, Ohio law governs the employment agreement and the bonus advance agreement. (ECF No. 1-1, ¶ 10(i), PageID #24; ECF No. 1-1, ¶ 9, PageID #40.)

Like other contracts, arbitration agreements "are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54 (1995). Courts "do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "Before compelling an unwilling party to arbitrate, the court must engage in a limited review

5

to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (citation omitted).

Under this inquiry, the Court proceeds in four steps: (1) "determine whether the parties agreed to arbitrate"; (2) "determine the scope of that agreement"; (3) "if federal statutory claims are asserted, . . . consider whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, . . . determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

1.

In this case, under the plain language of the employment agreement and the bonus advance agreement, the parties agreed to arbitrate. The former provides that "[a]ny disagreement, dispute, controversy, or claim of any kind arising out of or in connection to this Agreement" is subject to mandatory arbitration. (ECF No. 1-1, PageID #25.) The bonus advance agreement contains similar language, subjecting "any claims or disputes related to or arising out of this Agreement" to arbitration. (ECF No. 1-1, PageID #40.) Therefore, the parties agreed, broadly, to mandatory arbitration of "[a]ny disagreement, dispute, controversy, or claim of any kind arising out of or in connection to [the employment agreement]." (*Id.*, PageID #25.)

**2.**

However, Section 10(i) of the employment agreement exempts from arbitration claims brought "for the purposes of obtaining a restraining order or injunction against a violation of the provisions of this Agreement." (ECF No. 1-1, § 10(i), PageID #24.) Accordingly, the inquiry turns to the scope of the arbitration agreements in light of the carve out for injunctive relief.

On five of its six claims, Nations Lending seeks injunctive relief in addition to damages. (ECF No. 1, PageID #11–13.) "[I]n a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under . . . the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria [under Rule 65] which are prerequisites to the grant of such relief," particularly "where the withholding of injunctive relief would render the process of arbitration meaningless or a hollow formality." *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1380 (6th Cir. 1995); *see* Fed. R. Civ. P. 65.

While Nations Lending alleges that Mr. Gomez is a former employee who used confidential information in his new employment for a competitor (ECF No. 1, ¶¶ 23–26, PageID #4–5), and that the company has already lost five customers due to Mr. Gomez's actions (*id.*, ¶¶ 25–28, PageID #5), Nations Lending has failed to demonstrate that injunctive relief is necessary to prevent irreparable injury. As Defendant points out, Nations Lending has not sought a temporary restraining order or moved for a preliminary injunction. Mr. Gomez left Nations Lending some eighteen months ago—on May 2, 2023. Since then, and since the filing of this lawsuit,

Nations Lending has not taken steps to seek or secure the injunction as the carve-out from arbitration allows. It is unclear from the complaint when Mr. Gomez allegedly began employment with a competitor. Nations Lending notes in its opposition that "[a]fter his resignation, Gomez immediately began employment with . . . a mortgage company which directly competes with Nations Lending." (ECF No. 9, PageID #90.) But the record provides no indication when Nations Lending learned that fact. Even if it did so and then immediately filed this litigation, Nations Lending still has failed to take any step toward obtaining injunctive relief since it filed suit or since Mr. Gomez moved to dismiss.

At bottom, the exception to the employment agreement's arbitration clause for injunctive relief allows Nations Lending to seek to prevent immediately irreparable harm without having to take steps to initiate an arbitration and suffer irreparable harm during that delay. An injunction is not necessary here to vindicate the right of the parties to arbitrate. And nothing about proceeding in arbitration, as agreed, will interfere with the ability of Nations Lending to remedy any continuing harm through a post-arbitral injunction if it can establish entitlement to one.

### 3.

Because Nations Lending included a federal statutory claim in Count Three of its complaint (ECF No. 1, ¶¶ 44–56, PageID #7–9), the Court must consider whether Congress intended the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, to be arbitrable. *Stout*, 228 F.3d at 714. Neither party argues that Congress intended claims under the Defend Trade Secrets Act to be nonarbitrable. Other federal courts in Ohio have compelled arbitration for claims under the Defend Trade Secrets Act.

*See Hortonworks Inc. v. Daher*, No. 2:18-cv-516, 2019 U.S. Dist. LEXIS 29964, at *1 (S.D. Ohio Feb. 26, 2019); *see also Phoenix Grp. Home, LLC v. Anew Behavior*, LLC, No. 1:21-cv-00034, 2021 U.S. Dist. LEXIS 167479, at *13 (S.D. Ohio Sept. 3, 2021) (citations omitted) (where the party did "not argue that Congress intended claims under [Defend Trade Secrets Act] to be nonarbitrable, and the Court [found] that [the] federal statutory claims [were] arbitrable"). In the absence of any argument that Congress intended to exclude claims under the Defend Trade Secrets Act from arbitration, the Court sees no reason to exempt such claims from arbitration.

\*   \*   \*

Ultimately, the parties agreed to arbitrate, the plain language of the arbitration clauses at issue encompasses all the claims in this case, and all the claims are arbitrable. In limited circumstances, the exception in the employment agreement for injunctive relief would allow the Court to proceed at least aspects of this action in litigation. But those circumstances are not present here. Nations Lending has not sought a temporary restraining order or a preliminary injunction. And withholding an injunction would not render arbitration meaningless or a mere formality.

## CONCLUSION

For all these reasons, the Court **COMPELS** arbitration of this dispute. The Sixth Circuit has held that, under the Federal Arbitration Act, the Court must "stay proceedings pending arbitration only 'on application of one of the parties.'" *Hilton v. Midland Funding, LLC*, 687 Fed. Appx. 515, 519 (6th Cir. 2017) (quoting 9 U.S.C. § 3). However, the day before Mr. Gomez moved to dismiss this action, the Supreme Court decided *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024), holding that issuing a stay

when requested by a party is mandatory under the Act. Neither party cites *Smith*, and neither requested a stay in lieu of dismissal. However, because of the prospect for judicial proceedings to support the arbitration process and the potential for post-arbitral requests for injunctive relief, the Court **STAYS** this case pending arbitration. Finally, the Court **ORDERS** the parties to notify the Court of the arbitral tribunal and arbitrator no later than December 16, 2024 and to file a joint status report regarding the progress of the arbitration no later than March 31, 2025.

    **SO ORDERED.**

Dated: November 5, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio